UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

STEVEN A. CUCULICH, as Trustee of Inter Vivos
Tr II FBO The Cuculich Family,

                              Plaintiff,

    -v-

JOHN Z. RIGOS,

                             Defendant.

CIVIL ACTION NO.: 21 Civ. 6752 (SLC)

**OPINION AND ORDER**

**SARAH L. CAVE**, United States Magistrate Judge.

## I. INTRODUCTION

Plaintiff Steven A. Cuculich, as trustee (the "Trustee") of Inter Vivos Tr II FBO The Cuculich Family (the "Trust"), brings this action against Defendant John Z. Rigos ("Rigos"), seeking damages for Rigos' alleged breach of a guaranty of an agreement for the lease of commercial real estate in New York City (the "Agreement"). (ECF No. 13 (the "Amended Complaint")). Rigos has moved pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss the Amended Complaint for failure to state a claim. (ECF No. 22 (the "Motion")). Specifically, Rigos argues that the Trustee's claim is barred by a New York City law enacted in response to the COVID-19 pandemic that precludes enforcement of personal liability guaranties of commercial lease obligations arising between March 7, 2020, and June 30, 2021 (the "Guaranty Law"). (Id.; see N.Y.C. Admin. Code § 22-1005).

For the reasons set forth below, the Motion is DENIED.

**II. BACKGROUND**

**A. Factual Background**

The Court draws the following facts from the Amended Complaint, and presumes them to be true for purposes of the Motion. See Kitani v. N.Y.C. Transit, No. 19 Civ. 1043 (VSB), 2022 WL 874781, at *1 n.1 (S.D.N.Y. Mar. 24, 2022) (citing Kassner v. 2nd Ave. Delicatessen Inc., 496 F.3d 229, 237 (2d Cir. 2007)).

1. **The Agreement**

On November 3, 2014, the Trustee, on behalf of the Trust, entered into the Agreement with Rigos and "FlavorworksTruck LLC d/b/a The Delicious Life by Rocco DiSpirito" (the "Tenant") for the lease of premises located at 45-13 Broadway, Astoria, New York (the "Premises"). (ECF No. 13 ¶¶ 5, 6). The Agreement "provides that the Tenant would lease the Premises from the Trust in exchange for monthly lease payments to be made by the Tenant." (Id. ¶ 5). Specifically, the Agreement obligated the Tenant to pay monthly rent (the "Basic Rent") to the Trust as follows: "(i) $11,000.00 per month for the period beginning January 1, 2015 through December 31, 2017; (ii) $11,990.00 per month for the period beginning January 1, 2018 through December 31, 2020; (iii) $13,069.10 per month for the period beginning January 1, 2021 through December 31, 2023; and (iv) $14,245,31 per month for the period beginning January 1, 2024 through December 31, 2024." (Id. ¶ 11). The Agreement also obligated the Tenant "to obtain certain types of insurance policies for the benefit of the Trust and/or the Premises and maintain such insurance policies in full force and effect during the term of the [] Agreement." (Id. ¶¶ 12–15). Under the Agreement, the "Tenant agreed to reimburse the Trust for all damages incurred,

including reasonable attorneys' fees and expenses, due to any breach of the [] Agreement by the Tenant." (Id. ¶ 16).

Section 17.1 of the Agreement "sets forth the events that constitute a default[,]" which included the Tenant's failure to fulfill "any term or condition of [the Agreement] requiring the payment of Rent, Additional Rent or other charges due under [the Agreement] for more than ten (10) days after written notice" or "any of the covenants of [the Agreement] other than the payment of Basic Rent or Additional Rent." (ECF No. 13 ¶¶ 8–10).

Article 37 of the Agreement provided that "Rigos agreed to unconditionally guarantee the Trust that Rigos will fully and promptly pay and perform Tenant's present and future obligations" under the Agreement (the "Guaranty"). (ECF No. 13 ¶ 17). "Section 37.3 of the [] Agreement also provides that the Trust may enforce the [G]uaranty against Rigos before taking any court action against Tenant or any other person." (Id. ¶ 19).

### 2. The Tenant's Breach of the Agreement

The Trustee alleges that the "Tenant has failed to, among other things, make payments owed under the [] Agreement and, upon information and belief, maintain insurance policies as required under the [] Agreement." (ECF No. 13 ¶ 20). The Trustee also alleges that, as of October 20, 2021, i.e., the date the Trustee filed the Amended Complaint, the Tenant owed the Trust $313,350.00. (Id. ¶ 21). The Amended Complaint does not include a calculation or any other explanation as to how the Trustee computed this figure, or the time period that it covers.

On August 27, 2019, counsel for the Trust sent the Tenant a written demand for payment of the outstanding rent owed under the Agreement. (ECF No. 13 ¶ 22). On or about September 20, 2019, the Trustee filed in the Civil Court of the City of New York, County of Queens

a petition against the Tenant seeking "to recover possession of the Premises due to the Tenant's nonpayment of rent under the [] Agreement." (Id. ¶ 23). On December 3, 2019, the Trustee and the Tenant entered into a stipulation pursuant to which "the Tenant agreed to pay the outstanding amounts owed under" the Agreement. (Id. ¶ 24 (the "Stipulation")). The Tenant, however, "failed to make, and has continued to fail to make, payments owed under the [] Agreement." (Id.)

On July 12, 2021, counsel for the Trust sent Rigos a written demand "for payment pursuant to the [G]uaranty under the [] Agreement based on Tenant's failure to make payments under the [] Agreement beginning March 1, 2019." (ECF No. 13 ¶ 26). The Trustee alleges that "Rigos has failed to make any payment to the Trust or the Trustee or perform any of Tenant's obligations pursuant to his guaranty under the [] Agreement." (Id. ¶ 27). The Trustee "does not seek any payment from Rigos in violation of Section 22-1005 of the New York City Administrative Code." (Id. ¶ 28).

**B.  Procedural Background**

On August 10, 2021, the Trustee filed the original complaint. (ECF No. 1 (the "Complaint")). On October 6, 2021, the parties consented to Magistrate Judge jurisdiction for all purposes. (ECF No. 9).

On October 11, 2021, Rigos requested leave to file a motion to dismiss the Complaint, arguing, inter alia, that the Trustee's claim is "unenforceable" because he "is demanding payment of rent that allegedly accrued during the period covered by the Guaranty Law (i.e., March 7, 2020 through June 30, 2021 [the "Guaranty Period"])." (ECF No. 10 at 3 (the "Request")). On October 12, 2021, the Trustee responded that in this action, he "is not seeking any damages

that have accrued during" the Guaranty Period, is "only seeking damages that accrued during the 12-month period between March 1, 2019 and February 29, 2020 (excluding interest and attorneys' fees that are permissible pursuant to the underlying lease/guaranty that is the subject matter of the Complaint)[,]" and that he "intend[ed] to amend the Complaint to further clarify that the damages [he] sought [] are for damages that accrued prior to the COVID-19 pandemic and prior to" the Guaranty Period. (ECF No. 11 at 2–3). On October 13, 2021, the Court denied the Request and directed the Trustee to file the Amended Complaint by October 27, 2021 and Rigos to respond to the Amended Complaint by November 17, 2021. (ECF No. 12).

On October 20, 2021, the Trustee filed the Amended Complaint. (ECF No. 13). In the Amended Complaint, the Trustee alleges that he "does not seek any payment from Rigos in violation of Section 22-1005 of the New York City Administrative Code." (Id. ¶ 28).

On November 9, 2021, Rigos requested leave to file the Motion, arguing that, "[t]o the extent [the Trustee] seeks to recover allegedly unpaid rent that accrued during the period from March 7, 2020 through June 30, 2021, such claims are barred by the Guaranty Law." (ECF No. 14 at 3 (the "Second Request")). Rigos also requested a stay of discovery pending resolution of the Motion. (Id.) On November 15, 2021, the Trustee opposed the Second Request, arguing that "[t]he Amended Complaint clearly states that 1) the damages are based on the [T]enant's default and failure to make required lease payments under the [] [A]greement beginning in [sic] March 1, 2019 (over a year before the time period set forth in N.Y.C. Administrative Code § 22-1005), and 2) [the Trustee] is not seeking any payment from [Rigos] in violation of N.Y.C. Administrative Code § 22-1005." (ECF No. 15 at 1). On November 16, 2021, the Court partially

granted the Second Request, and directed Rigos to file the Motion by November 17, 2021. (ECF No. 16). The Court denied Rigos' request for a stay of discovery. (Id.)

On November 17, 2021, Rigos filed the Motion, which he re-filed on December 22, 2021 to correct docketing deficiencies. (ECF Nos. 17; 22). On December 8, 2021, the Trustee opposed the Motion (the "Opposition"). (ECF Nos. 18; 28). On December 22, 2021, Rigos filed a reply. (ECF No. 26 (the "Reply")).

On February 9, 2022, Court held an initial conference and entered an initial case management plan. (ECF No. 33). On August 1, 2021, the Court granted the parties' request to extend the discovery deadline to September 15, 2022. (ECF Nos. 44; 45).[1]

### III. LEGAL STANDARDS

#### A. Motion to Dismiss

"To survive a Rule 12(b)(6) motion, a plaintiff must allege facts sufficient 'to state a claim to relief that is plausible on its face.'" Shannon v. Credit Agricole Sec. (USA) Inc., No. 17 Civ. 0667 (AJN), 2018 WL 1474390, at *2 (S.D.N.Y. Mar. 22, 2018) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" Id. (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678. "A complaint cannot survive a motion to dismiss 'where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct.'" Shannon, 2018

---

[1] The Trustee's motion to compel the deposition of non-party Rocco DiSpirito, the alleged principal of the Tenant, remains pending. (ECF No. 46).

WL 1474390, at *2 (quoting Iqbal, 556 U.S. at 679). "The complaint may be dismissed only where 'it appears beyond doubt that the plaintiff can prove no set of facts in support of [her] claim which would entitle [her] to relief.'" Hernandez v. Coughlin, 18 F.3d 133, 136 (2d Cir. 1994) (quoting Allen v. Westpoint-Pepperell, Inc., 945 F.2d 40, 44 (2d Cir. 1991)).

"A court evaluating a motion under Rule 12(b)(6) must 'accept all allegations in the complaint as true and draw all inferences in the non-moving party's favor.'" Jiggetts v. United Parcel Serv., No. 14 Civ. 8291 (AJN), 2017 WL 1164698, at *4 (S.D.N.Y. Mar. 27, 2017) (quoting LaFaro v. N.Y. Cardiothoracic Grp., PLLC, 570 F.3d 471, 475 (2d Cir. 2009) (internal citations omitted)). A court is not required "to accept as true a legal conclusion couched as a factual allegation." Twombly, 550 U.S. at 555 (internal citation omitted). A court may "consider any written instrument attached to the complaint, statements or documents incorporated into the complaint by reference . . . and documents possessed by or known to the plaintiff and upon which it relied in bringing the suit." ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007).

**B. Breach of Guaranty**

"A guaranty is a collateral promise to answer for the payment of a debt or obligation of another, in the event the first person liable to pay or perform the obligation fails." Greenlight Reinsurance, Ltd. v. Appalachian Underwriters, Inc., 958 F. Supp. 2d 507, 519 (S.D.N.Y. 2013) (citation omitted). "In order to survive a motion to dismiss on a breach of guaranty claim in New York, a plaintiff must plausibly plead (1) that it is owed a debt from a third party; (2) that the defendant made a guarantee of payment of the debt; and (3) that the debt has not been paid by

either the third party or the defendant." Ameriway Corp. v. Chen, No. 19 Civ. 9407 (VSB), 2021 WL 6113373, at *4 (S.D.N.Y. Dec. 27, 2021) (citation omitted).[2]

### C. The Guaranty Law

"On April 21, 2020, the New York City Council . . . announced its intent to consider a COVID-19 relief package to protect tenants, help small businesses survive, and find creative ways to address the public health crisis brought on by the virus." Melendez v. City of New York, 16 F.4th 992, 1001 (2d Cir. 2021) (citation omitted). The package included the Guaranty Law, which took effect on May 26, 2020 and made certain "commercial lease guaranties permanently unenforceable for rent arrears arising between March 7, 2020, and June 30, 2021[.]" Id. Specifically, the Guaranty Law provides:

> A provision in a commercial lease or other rental agreement involving real property located within the city, or relating to such a lease or other rental agreement, that provides for one or more natural persons who are not the tenant under such agreement to become, upon the occurrence of a default or other event, wholly or partially personally liable for payment of rent, utility expenses or taxes owed by the tenant under such agreement, or fees and charges relating to routine building maintenance owed by the tenant under such agreement, shall not be enforceable against such natural persons if the conditions of paragraph 1 and 2 are satisfied:
>
> 1. The tenant satisfies the conditions of subparagraph (a), (b) or (c):

---

[2] Neither party has addressed which law applies to the merits of the Trustee's breach of guaranty claim and, instead, have assumed that New York law applies. (See ECF Nos. 25; 26; 28). Where "the parties do not dispute that New York law applies, and, where the parties assume, in their briefs, that the law of a particular state governs, that is 'sufficient to establish the applicable choice of law.'" Horowitz v. Spark Energy, Inc., No. 19 Civ. 7534 (PGG) (DF), 2020 WL 6561600, at *7 n.5 (S.D.N.Y. July 31, 2020), adopted by, 2020 WL 4917180 (S.D.N.Y. Aug. 21, 2020) (quoting Arch Ins. Co. v. Precision Stone, Inc., 584 F.3d 33, 39 (2d Cir. 2009)); see also Walker v. Thompson, 404 F. Supp. 3d 819, 823 n.3 (S.D.N.Y. 2019) ("Declining to engage in a choice of law analysis is especially appropriate here, where the parties have failed to brief the question and applied New York law without analysis."). Accordingly, for purposes of deciding the Motion, the Court applies New York law.

> (a) The tenant was required to cease serving patrons food or beverage for on-premises consumption or to cease operation under executive order number 202.3 issued by the governor on March 16, 2020;
>
> (b) The tenant was a non-essential retail establishment subject to in-person limitations under guidance issued by the New York state department of economic development pursuant to executive order number 202.6 issued by the governor on March 18, 2020; or
>
> (c) The tenant was required to close to members of the public under executive order number 202.7 issued by the governor on March 19, 2020.
>
> 2. The default or other event causing such natural persons to become wholly or partially personally liable for such obligation occurred between March 7, 2020 and June 30, 2021, inclusive.

N.Y.C. Admin. Code § 22-1005.  "As the statutory text makes plain, the law pertains to leases held by commercial tenants who were required to cease or limit operations under Executive Orders 202.3, 202.6, or 202.7." Melendez, 16 F.4th at 1004.  "As to those leases, the law applies retroactively to rent arrears dating from March 7, 2020, as well as prospectively through June 30, 2021, without regard to the financial circumstances of the tenant, the guarantor, or the landlord."  Id. at 1004–05.  "In sum, for rent arrears arising during that almost sixteen-month period, the Guaranty Law does not simply defer a landlord's ability to enforce a personal guaranty; it forever extinguishes it." Id. at 1005.

## IV. DISCUSSION

Rigos argues that the "Guaranty Law applies to this case and bars [the Trustee]'s claims[.]" (ECF No. 25 at 6).  Specifically, Rigos argues that, "[a]lthough the Amended Complaint is ambiguous as to the time period for which [the Trustee] is seeking to recover allegedly unpaid rent from [Rigos], [the Trustee] is clearly claiming that [the Tenant's] purported default includes arrears that accrued from March 2020 through June 2021, which is specifically covered by the

Guaranty Law." (Id. at 6–7).  Rigos characterizes at "self-serving" and "conclusory" the Trustee's allegation that he "does not seek any payment from Rigos in violation of Section 22-1005 of the New York City Administrative Code."  (ECF No. 25 at 7 (quoting ECF No. 13 ¶ 28)).

The Trustee advances three arguments in his Opposition: 1) "the Amended Complaint makes clear that [he] is not seeking any payment in violation of" the Guaranty Law; 2) the Guaranty Law "does not bar a claim for damages based on a default that occurred prior to" the Guaranty Period; and 3) the Guaranty Law does not bar the "claim regarding Rigos's failure to maintain insurance policies . . . ."  (ECF No. 28 at 7–8).

The Court finds that the Trustee has plausibly alleged a breach of guaranty claim under New York law.  Initially, as the Trustee correctly notes, Rigos does not contest that the Amended Complaint adequately alleges the elements of a breach of guaranty claim, i.e., that (i) the Tenant owes the Trust a debt, (ii) Rigos guaranteed payment of that debt, and (iii) neither the Tenant nor Rigos has paid the debt.  (ECF Nos. 13 ¶¶ 6–36; 25 at 4–7; 28 at 7); see Ameriway Corp., 2021 WL 6113373 at *4; Greenlight Reinsurance Ltd., 958 F. Supp. 2d at 521.  The Amended Complaint specifically alleges that the Agreement obligated the Tenant to pay a monthly Basic Rent to the Trust, that Rigos guaranteed the Tenant's payment of the Basic Rent, that the Tenant defaulted under the Agreement by failing to pay the Basic Rent for more than ten days after written notice, and that both the Tenant and Rigos have failed to make the outstanding payments. (ECF No. 13 ¶¶ 6–36).  Accordingly, the Court focuses its analysis on Rigos' argument that the Guaranty Law bars the Trustee's breach of guaranty claim.

The Court agrees with the Trustee that, because he predicates the breach of guaranty claim on payment obligations that arose before March 2020, the Guaranty Law does not bar the

claim as a matter of law. The Trustee alleges that the Tenant failed to make payments under the Agreement "beginning March 1, 2019[,]" and that, on August 27, 2019, he and counsel for the Trust sent the Tenant a written demand for payment of the outstanding amount owed under the Agreement at that time. (ECF No. 13 ¶¶ 20, 22, 26). On December 3, 2019, the Trustee and the Tenant entered the Stipulation, pursuant to which "the Tenant agreed to pay the outstanding amounts owed under" the Agreement, but subsequently "failed to make, and has continued to fail to make, payments owed under the [] Agreement." (Id. ¶ 24). Despite a written demand on July 12, 2021, "Rigos has failed to make any payment to the Trust or the Trustee or perform any of Tenant's obligations pursuant to his guaranty under the [] Agreement." (Id. ¶¶ 26– 27). Thus, the Trustee has plausibly alleged that he seeks damages for Rigos' failure to pay rent arrears that arose before March 7, 2020, when the Guaranty Period began. Therefore, the Guaranty Law does not bar the Trustee's claim. See N.Y.C. Admin. Code § 22-1005.

In his Reply, Rigos relies on 3rd & 60th Associates Sub LLC v. Third Ave. M & I, LLC, in which the First Department affirmed the dismissal of a breach of guaranty claim as barred by the Guaranty Law. 199 A.D.3d 601 (1st Dep't 2021). In that case, the plaintiff, a landlord, sought to enforce a commercial lease guaranty after the tenant failed to make lease payments. Id. The trial court granted the guarantor's motion to dismiss, and the plaintiff appealed. Id. In affirming the dismissal, the First Department found that the plaintiff's claim failed as a matter of law because the guarantor's personal liability arose during the Guaranty Period, i.e., between March 7, 2020 and June 30, 2021. Id. The court noted that, while the lease default occurred before March 7, 2020, the parties subsequently entered into a stipulation of settlement that "deemed the lease 'expired'" and "provided for a three-business-day cure period following delivery of a

11

notice of default" which, the court found, did not start to run until March 9, 2020, i.e., during the Guaranty Period. Id. Accordingly, the First Department found that the Guaranty Law "squarely applie[d]" and barred the plaintiff's claim. Id. (noting that "regardless of when a tenant's lease default occurred, the critical time frame for determining when the protections of Administrative Code § 22–1005 attach is the time of the event causing such natural persons to become liable, which, in this case, necessarily included the cure period set forth in the parties' stipulation") (citation and alterations omitted).

Rigos' reliance on 3rd & 60th Associates is misplaced. As discussed above, the Trustee plausibly alleges that Rigos' personal liability under the Guaranty arose in September 2019, after the Tenant failed to pay the Basic Rent for more than ten days after the Trust provided written notice on August 27, 2019. (ECF No. 13 ¶¶ 22–23). Although the Trustee also alleges that he and the Tenant entered into the Stipulation on December 3, 2019, he does not allege—and the Court has no basis at this stage of the litigation to conclude—that the Stipulation deemed the Agreement expired or otherwise deferred Rigos' personal liability. See 558 Seventh Ave. Corp. v. Times Square Photo Inc., 194 A.D.3d 561, 562 (1st Dep't 2021) (reversing trial court's sua sponte dismissal of breach of guaranty claim where the plaintiff alleged the guarantor was "liable under the guaranty for periods outside" the Guaranty Period). Accordingly, the Trustee has plausibly alleged that Rigos' personal liability under the Guaranty arose before March 7, 2020, such that the Guaranty Law does not bar his claim.

## V.CONCLUSION

For the reasons set forth above, the Motion is DENIED. The Clerk of Court is respectfully directed to close ECF No. 22.

Dated:	New York, New York
	September 26, 2022

_____
SARAH L. CAVE
United States Magistrate Judge