UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

STEVEN A. CUCULICH, as Trustee of Inter Vivos
Tr II FBO The Cuculich Family,

                              Plaintiff,

        -v-

JOHN Z. RIGOS,

                              Defendant.

CIVIL ACTION NO.: 21 Civ. 6752 (SLC)

**OPINION AND ORDER**

**SARAH L. CAVE**, United States Magistrate Judge.

**I. INTRODUCTION**

        Plaintiff Steven A. Cuculich, as trustee (the "Trustee") of Inter Vivos Tr II FBO The Cuculich

Family (the "Trust"), brings this action against Defendant John Z. Rigos ("Mr. Rigos"), seeking

damages for Mr. Rigos' alleged breach of a guaranty of an agreement for the lease of commercial

real estate in Astoria, New York (the "Agreement").  (ECF No. 13 (the "Amended Complaint")).

With discovery complete, the Trustee now moves pursuant to Federal Rule of Civil Procedure 56

for summary judgment (ECF No. 72 (the "Motion")), which Mr. Rigos opposes.  (ECF No. 78

(the "Opposition")).  Mr. Rigos does not dispute that he failed to perform under the Agreement

and argues instead that the Trustee's claim is partially barred by a New York City law enacted in

response to the COVID-19 pandemic that precludes enforcement of personal liability guaranties

of commercial lease obligations arising between March 7, 2020 and June 30, 2021 (the "Guaranty

Law").[1]  (ECF No. 78 at 5–8).

        For the reasons set forth below, the Motion is GRANTED IN PART and DENIED IN PART.

---

[1] N.Y.C. Admin. Code § 22-1005.

## II. BACKGROUND

### A. Factual Background

The following facts are drawn primarily from the Trustee's Rule 56.1 Statement of Material Facts (ECF No. 76 (the "Trustee's 56.1")) and the declarations and exhibits cited therein (ECF Nos. 74–75). The Court has also considered the transcripts of the depositions of Mr. Rigos and non-party Rocco DiSpirito ("Mr. DiSpirito"), which are annexed to the declaration of Mr. Rigos' counsel, Gerard C. Morici, in opposition to the Motion. (ECF Nos. 77; 77-2; 77-3).

Mr. Rigos did not submit a response to the Trustee's 56.1. The Court's Local Rules provide that "[e]ach numbered paragraph in the [moving party's] statement of material facts . . . will be deemed to be admitted for purposes of the motion [for summary judgment] unless specifically controverted by a correspondingly numbered paragraph . . . by the opposing party." S.D.N.Y. Loc. Civ. R. 56.1(c). "A nonmoving party's failure to respond to a Rule 56.1 statement permits the court to conclude that the facts asserted in the statement are uncontested and admissible." T.Y. v. N.Y.C. Dep't of Educ., 584 F.3d 412, 418 (2d Cir. 2009).[2] "In the typical case, failure to respond results in a grant of summary judgment once the court assures itself that Rule 56's other requirements have been met." Id.; see Jackson v. Fed. Express, 766 F.3d 189, 194 (2d Cir. 2014) ("Before summary judgment may be entered, the district court must ensure that each statement of material fact is supported by record evidence sufficient to satisfy the movant's burden of production even if the statement is unopposed."); S.D.N.Y. Loc. Civ. R. 56.1(d) ("Each statement by the movant or opponent pursuant to Rule 56.1(a) and (b), including each statement controverting any statement of material fact, must be followed by citation to evidence which

---

[2] Internal citations and quotation marks are omitted from case citations unless otherwise indicated.

would be admissible, set forth as required by Fed. R. Civ. P. 56(c).").  Accordingly, the Court deems undisputed all statements in the Trustee's 56.1 that are supported by admissible evidence.[3]

### 1.  The Agreement and the Guaranty

On November 3, 2014, the Trustee, on behalf of the Trust, entered into the Agreement with "FlavorworksTruck LLC d/b/a The Delicious Life by Rocco DiSpirito" (the "Tenant") and Mr. Rigos for the lease of premises located at 45-13 Broadway, Astoria, New York (the "Premises").  (ECF No. 76 ¶ 1; see ECF Nos. 13 ¶ 6; 71 ¶ 6; 75 ¶ 3; 75-1 at 1).  The Agreement provided that the Tenant would lease the Premises from the Trust in exchange for monthly payments and other obligations.  (ECF No. 76 ¶ 2; see ECF Nos. 75 ¶ 4; 75-1 at 1–2, 5–7 ¶¶ 1.1, 3.1–6.11).  Specifically, the Agreement obligated the Tenant to pay monthly rent (the "Basic Rent") to the Trust as follows:  (i) $11,000.00 per month beginning January 1, 2015 through December 31, 2017; (ii) $11,990.00 per month beginning January 1, 2018 through December 31, 2020; (iii) $13,069.10 per month beginning January 1, 2021 through December 31, 2023; and (iv) $14,245.31 per month beginning January 1, 2024 through December 31, 2024. (ECF No. 76 ¶ 3; see ECF No. 75-1 at 3 ¶ 3.4).  The Agreement also obligated the Tenant to pay "additional rent" comprising "all annual real estate taxes in excess of $25,549 which may be levied during the term of the [] Agreement against the Premises" (the "Additional Rent," with the Basic Rent, the "Rent").  (ECF No. 76 ¶ 4; see ECF No. 75-1 at 3–4 ¶¶ 3.5, 4.1).  The Tenant's Rent was due "in advance, on the first day of each and every calendar month throughout the" term of

---

[3] Unfortunately, "rather than streamlining the consideration of [the Motion] as the local rule intended, the net effect of [Mr. Rigos'] failure to submit a Local Rule 56.1 Counter Statement is to impose upon the Court the added burden of combing through the record to assure itself that the facts asserted by [the Trustee] are supported by admissible evidence."  Bank of Am., N.A. v. Greuner Med. P.C., No. 22 Civ. 9620 (NRB), 2024 WL 182408, at *2 (S.D.N.Y. Jan. 17, 2024).

the Agreement.  (ECF No. 75-1 at 3–5 ¶¶ 3.2, 4.5).  In addition to paying Rent, the Agreement required the Tenant to "obtain hazard, liability[,] and rent insurance policies for the benefit of the Trust and/or the Premises and maintain such insurance policies in full force and effect during the term of the [] Agreement."  (ECF No. 76 ¶ 5; see ECF No. 75-1 at 5–7 ¶¶ 6.1–6.11).

The Agreement enumerated the events that would constitute a default by the Tenant. (ECF No. 75-1 at 13 ¶ 17.1).  This included the Tenant's failure to fulfill (i) "any term or condition of [the Agreement] requiring the payment of [Rent] or other charges due under [the Agreement] for more than ten (10) days after written notice" or (ii) "any of the covenants of [the Agreement] other than the payment of" Rent.  (Id.; see ECF No. 76 ¶¶ 6–8).  Under the Agreement, the "Tenant agreed to reimburse the Trust for all damages incurred, including reasonable attorneys' fees and expenses, due to any breach of the [] Agreement by the Tenant."  (ECF No. 76 ¶ 10; see ECF No. 75-1 at 16 ¶ 20.2).

Mr. Rigos "agreed to unconditionally guarantee the Trust that [he] will fully and promptly pay and perform [the] Tenant's present and future obligations" under the Agreement (the "Guaranty").  (ECF No. 76 ¶ 11; see ECF No. 75-1 at 26–29 ¶¶ 37.1–37.9).  Specifically, Mr. Rigos "expressly, absolutely, unconditionally[,] and irrevocably guarantee[d], [(i)] without set-off or deduction, jointly and severally, the prompt payment . . . when due by the Tenant of all monies . . . due the [Trust] pursuant to the [Agreement] . . . and [(ii)] the prompt and proper performance by the Tenant of all of its obligations to the [Trust] pursuant to the [Agreement], other than those relating to the payment of money[.]"  (ECF No. 75-1 at 26 ¶ 37.1).  The Agreement specified that:

> [n]otwithstanding the foregoing or any other provision in this Guaranty to the contrary, in any claim brought against [Mr. Rigos] hereunder, [Mr. Rigos] shall be

> entitled to assert all defenses and rights that the Tenant may have against the [Trust].  Accordingly, the [Trust] shall be entitled to receive from [Mr. Rigos] what it would receive from the Tenant (assuming the Tenant had sufficient funds) in a claim for damages or specific performance under the [Agreement].

(Id. at 26–27 ¶ 37.1).  The Agreement also limited Mr. Rigos' potential liability to "an amount equal to all Rent (including Additional Rent) due under the Lease for the twelve[-]month period following the date of the default giving rise to such Payment Obligations[,]" regardless of the length of the Tenant's default.  (Id.; see ECF No. 76 ¶ 12).

## 2.  The Tenant

Mr. DiSpirito signed the Agreement on behalf of the Tenant.  (ECF Nos. 75-1 at 32; 77-2 at 18).  Mr. DiSpirito is a chef who "work[s] in restaurants, [] own[s] a food delivery business, [] write[s] cookbooks, [] appear[s] on television, [and] consult[s]."  (ECF No. 77-2 at 11). He described the business conducted at the Premises as "preparing healthy meals to deliver to people[.]"  (Id. at 34; see id. at 37 ("Flavorworks Trucks is the business that provides healthy meal service delivery to people who live in New York City and beyond."))  Mr. DiSpirito "never operated a restaurant at the [P]remises" and explained that "it was purely a meal delivery business[.]"  (Id. 37–38; see id. at 52 (testifying that "there wasn't a restaurant" at the Premises)). Similarly, he stated that the Premises had neither "on-premises food and beverage service" nor "members of the general public eating or drinking[.]"  (Id. at 56; see id. at 31 (testifying that the Tenant "never had consumers actually coming to the" Premises)).  Mr. DiSpirito also confirmed that he "never had a permit to operate a restaurant at the [P]remises" or for "any on premises food or beverage service[.]"  (Id. at 62).

Mr. Rigos—who works "in the restaurant business" and is "part of a company that owns a portfolio of different restaurant brands"—has "never visited the [P]remises[.]"  (ECF No. 77-3

at 2–3, 7).  He understood that Mr. DiSpirito's operation at the Premises was "<u>not</u> a restaurant" but rather a "commercial kitchen" where "he produce[d] meals for weight loss that he would . . . then deliver to his clients[.]"  (<u>Id.</u> at 10 (emphasis added)).  Mr. Rigos based his understanding on statements by Mr. DiSpirito and the Trustee.  (<u>Id.</u> at 7, 10).

### 3.  The Tenant's Breach of the Agreement

In a declaration submitted in support of the Motion, the Trustee attests that, "[b]eginning March 1, 2019, [the] Tenant failed to, among other things, make payments owed under the [] Agreement and, upon information and belief, maintain insurance policies as required under the [] Agreement."  (ECF No. 75 ¶ 9).  By letter dated August 27, 2019, counsel for the Trust demanded that the Tenant pay $62,750.00 for unpaid Rent "from April 1, 2019 to August 31, 2019[.]"  (ECF No 75-4 at 2 (the "Tenant Demand Letter"); <u>see</u> ECF Nos. 75 ¶ 11; 76 ¶ 17).[4]

On September 20, 2019, the Trustee filed a petition against the Tenant in New York City Civil Court, Queens County, for a summary proceeding to recover possession of the Premises due to the Tenant's nonpayment of Rent.  (ECF Nos. 13 ¶ 23; 75-4 at 3).  <u>See</u> <u>Cuculich v. FlavorworksTruck LLC</u>, Index No. LT-68062-19/QU (Qns. Civ. Ct.).  According to the Trustee, "[d]espite an in-Court Stipulation of Settlement dated December 3, 2019 between the Trustee and the Tenant whereby the Tenant agreed to pay the outstanding amounts owed under the []

---

[4] The Tenant Demand Letter reflects that the $62,750.00 was comprised of $12,550.00 in unpaid Rent for each month from April 2019 through August 2019.  (ECF No. 75-4 at 2).  Because the Basic Rent during that period was $11,990.00 (<u>see</u> ECF No. 75-1 at 3 ¶ 3.4), it appears the Trust calculated the Additional Rent to be $560.00 per month ($12,550.00 - $11,990.00).  The Tenant Demand Letter also reflects that, "[p]rior to [the] demand, a rent default letter was sent by certified mail" to the Tenant.  (ECF No. 75-4 at 2).  The Trustee did not submit a copy of this earlier letter with the Motion.

Agreement, the Tenant failed to make, and has continued to fail to make, payments owed under the [] Agreement."  (ECF No. 13 ¶ 24).

### 4.  The Closure

Mr. DiSpirito testified that he temporarily ceased operations at the Premises for "months at time" in April through July of 2020 (the "Closure"), and that he did so because he "believe[d]" that "an emergency executive order issued by" the Governor of the State of New York in response to the COVID-19 pandemic required him to do so.  (ECF No. 77-2 at 39–40, 56–57).  Mr. DiSpirito conceded that he was "not sure if [the Closure was] directly a result of a legal order issued or just people not wanting to work and customers not wanting to consume."  (Id. at 57).  He claimed, however, that "there were many executive orders issued" and that "[i]t was incredibly confusing to know where you stood in the definitions[.]"  (Id.)  Mr. DiSpirito stated that it was his "general belief that these orders affected [him] and [he] responded to them in the most earnest way possible."  (Id. at 57–58).

When questioned about the Closure, Mr. Rigos similarly testified that he "believe[d]" that "commercial kitchens" were required to cease operations during the pandemic.  (ECF No. 77-3 at 10).  Regarding the basis for this belief, Mr. Rigos stated that he "shut down every one of [his] restaurants when COVID appeared" and that "everybody [he] know[s] in the restaurant world shut down operations."  (Id.)  Mr. Rigos conceded, however, that he does not operate any commercial kitchens, and that he was only "assuming" that the Closure was required by law.  (Id. at 10–11).

### 5. <u>Mr. Rigos' Breach of the Guaranty</u>

By letter dated July 12, 2021, the Trustee advised Mr. Rigos that "[t]he Tenant ha[d] been in default under the [Agreement] since at least March 2019" and, pursuant to the Guaranty, demanded that Mr. Rigos "make payment of an amount equal to all Rent (including Additional Rent) due under the Lease for the twelve[-]month period following the date of the default giving rise to such Payment Obligations."   (ECF No. 74-2 at 2 (the "Rigos Demand Letter"); <u>see</u> ECF Nos. 13 ¶ 26; 71 ¶ 9; 76 ¶ 18).  The Rigos Demand Letter stated that "the amount due [was] $150,600[,]" but did not provide a calculation or other explanation for this amount. (ECF No. 74-2 at 2).  Despite the Rigos Demand Letter, Mr. Rigos "has failed and refused to comply with the Guaranty."  (ECF No. 76 ¶ 19; <u>see</u> ECF No. 75 ¶ 12).

In the Motion, the Trustee states that, "[f]rom March 1, 2019 to December 1, 2022, the Tenant owes $537,219.48, consisting of (i) $532,306.88 for unpaid [R]ent" (the "Unpaid Rent"), and "(ii) $4,912.60 for an August 2022 payment of an insurance policy with Attune Insurance that the Trust was forced to purchase due to Tenant's failure to maintain insurance in accordance with the [] Agreement."  (ECF No. 76 ¶ 15; <u>see</u> ECF No. 75 ¶ 10).  The Trustee further states that Mr. Rigos' "liability for the Tenant's payment obligations under the [] Agreement—payment of Base Rent and Additional Rent—is limited to $155,774.58" (the "Guaranty Damages"), "which represents the amount of all Rent (including Additional Rent) due under the [] Agreement for the twelve[-]month period following the date of the Tenant's initial default."  (ECF No. 76 ¶ 16 (citing ECF No. 75-1 at 26–27 ¶ 37.1)).  The Trustee did not provide a calculation for this figure, but the

Court reasonably infers that the Guaranty Damages reflect the amount of Unpaid Rent from March 2019 through February 2020 (the "Default Period").[5]

To support his statement concerning the amount of Unpaid Rent, the Trustee filed "a ledger showing the outstanding [U]npaid [R]ent and excess real estate taxes owed by [the] Tenant" between January 2019 and December 2022.  (ECF No. 75 ¶ 10; see ECF No. 75-2 at 2 (the "Ledger")).  The Ledger reflects that the Additional Rent during the Default Period was $990.08 per month in 2019 and $996.89 per month in 2020.  (ECF No. 75-2 at 2–3).  The Ledger also reflects that the Tenant made six payments to the Trust during the Default Period that totaled $88,250.00 (the "Payments"), although a balance remained outstanding.  (Id. at 2).  The Payments are reflected in the Trustee's calculation of the Unpaid Rent.  (Id.)  The Payments are not reflected, however, in the Trustee's calculation of the Guaranty Damages, which represent the total amount of Rent that the Trust charged the Tenant during the Default Period. (ECF No. 76 ¶ 16 (citing ECF No. 75-1 at 25–26 ¶ 37.1); see ECF Nos. 75-1 at 3 ¶ 3.4; 75-2 at 2).

**B.  Procedural Background**

On August 10, 2021, the Trustee filed the original complaint in this action.  (ECF No. 1 (the "Complaint")).  On October 6, 2021, the parties consented to Magistrate Judge jurisdiction for all purposes.  (ECF No. 9).

On October 11, 2021, Mr. Rigos requested leave to move to dismiss the Complaint, on the grounds that, inter alia, the Trustee's claim was an unenforceable "demand [for] payment of rent that allegedly accrued during the period covered by the Guaranty Law[,]" i.e., March 7, 2020 through June 30, 2021 (the "Guaranty Law Period").  (ECF No. 10 at 3 (the "Request")).

---

[5] (($11,990.00 + $990.08) * 10) + (($11,990.00 + $996.89) * 2) = $155,774.58.

On October 12, 2021, the Trustee confirmed that, in this action, he "is not seeking any damages that have accrued during" the Guaranty Law Period; is "only seeking damages that accrued during the 12-month period between March 1, 2019 and February 29, 2020 (excluding interest and attorneys' fees that are permissible pursuant to the [Agreement] . . . )[;]" and that he "intend[ed] to amend the Complaint to further clarify that the damages [he] sought . . . are for damages that accrued prior to the COVID-19 pandemic and prior to" the Guaranty Law Period.  (ECF No. 11 at 1–2). On October 13, 2021, the Court denied the Request, and directed the Trustee to file the Amended Complaint by October 27, 2021 and Mr. Rigos to respond by November 17, 2021. (ECF No. 12 at 3).

On October 20, 2021, the Trustee filed the Amended Complaint, in which he states that he "does not seek any payment from [Mr.] Rigos in violation of" the Guaranty Law. (ECF No. 13 ¶ 28).  Like the Complaint, the Amended Complaint contains a single cause of action against Mr. Rigos for breach of the Guaranty (the "Guaranty Claim").  (Id. ¶¶ 29–36).  The Trustee seeks "damages in an amount to be proven at trial, but . . . not less than the jurisdictional amount pursuant to 28 U.S.C. § 1332(a), plus interest[,]" as well as "the costs and disbursements of this action, including his reasonable attorneys' fees and court costs[.]"  (Id. at 8).

On November 17, 2021, Mr. Rigos filed a motion to dismiss the Amended Complaint (the "MTD"), which he re-filed on December 22, 2021 to correct docketing deficiencies. (ECF Nos. 17; 22).  Mr. Rigos argued that "[a]lthough the Amended Complaint is ambiguous as to the time period for which [the Trustee] is seeking to recover allegedly unpaid [R]ent from [Mr. Rigos], [the Trustee] is clearly claiming that [the Tenant's] purported default includes arrears that accrued from March 2020 through June 2021, which is specifically covered by the Guaranty

Law." (ECF No. 25 at 6–7). On December 22, 2021, the Trustee opposed the MTD, arguing, inter alia, that he "is not seeking any payment in violation of" the Guaranty Law, which "does not bar a claim for damages based on a default that occurred prior to" the Guaranty Law Period. (ECF No. 28 at 7–8).

On February 9, 2022, Court held an initial conference and entered an initial case management plan that set August 1, 2022 as the deadline to complete discovery. (ECF No. 33 ¶ 6.A). On August 2, 2022, at the parties' request, the Court extended the discovery deadline to September 15, 2022. (ECF Nos. 44–45). On September 22, 2022, the parties certified the completion of all discovery other than the deposition of Mr. DiSpirito. (ECF No. 50).

On September 26, 2022, the Court denied the MTD. (ECF No. 51). See Cuculich as Tr. of Inter Vivos Tr II FBO The Cuculich Fam. v. Rigos, No. 21 Civ. 6752 (SLC), 2022 WL 4467446 (S.D.N.Y. Sept. 26, 2022). First, the Court found that, as Mr. Rigos effectively conceded in the MTD, the Trustee had "adequately allege[d] the elements of a breach of guaranty claim, i.e., that (i) the Tenant owes the Trust a debt, (ii) Mr. Rigos guaranteed payment of that debt, and (iii) neither the Tenant nor Mr. Rigos has paid the debt." Cuculich, 2022 WL 4467446, at *5. Second, the Court agreed with the Trustee that, "because he predicates the [Guaranty Claim] on payment obligations that arose before March 2020, the Guaranty Law does not bar the [Guaranty Claim] as a matter of law." Id. at *6.

On December 20, 2022, the Trustee certified the completion of Mr. DiSpirito's deposition and, on January 20, 2023, requested leave to file the Motion. (ECF No. 65).

On March 29, 2023, Mr. Rigos filed his answer to the Amended Complaint. (ECF No. 71 (the "Answer")). The Answer includes seven affirmative defenses, including that the Guaranty

Claim is "barred, in whole or in part, by" the Guaranty Law (the "Guaranty Law Defense"). (Id. ¶ 29).[6]

On March 30, 2023, the Trustee filed the Motion.  (ECF No. 72).  On April 13, 2023, Mr. Rigos filed the Opposition.  (ECF No. 78).  As noted above, the Opposition does not include a response to the Trustee's 56.1.  (See § II.A, supra).  On April 20, 2023, the Trustee filed a reply. (ECF No. 79 (the "Reply")).

### III. DISCUSSION

#### A.  Legal Standards

##### 1.  Summary Judgment

"Summary judgment is appropriate where the admissible evidence and pleadings demonstrate 'no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'"  N.Y.C. Transit Auth. v. Express Scripts, Inc., 588 F. Supp. 3d 424, 433 (S.D.N.Y. 2022) (quoting Fed. R. Civ. P. 56(a)); see Johnson v. Killian, 680 F.3d 234, 236 (2d Cir. 2012) (per curiam).  To qualify as a genuine dispute of material fact, the evidence must be "such that a reasonable jury could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

---

[6] Mr. Rigos' other affirmative defenses (the "Other Defenses") are that:  (i) "the Amended Complaint fails to state a claim upon which relief may be granted[;]" (ii) the Guaranty Claim is "barred, in whole or in part, by the terms of the [] Agreement[;]" (iii) the Trustee's alleged "damages must be reduced as a result of [his] failure to mitigate [his] damages;" (iv) the Trustee "is not entitled to an award of consequential damages or attorneys' fees[;]" (v) any damages the Trustee suffered "resulted from the acts or omissions of person or entities other than" Mr. Rigos; (vi) the Guaranty Claim fails because Mr. Rigos "has fulfilled all of [his] duties and obligations under the [G]uaranty and [] Agreement[;]" and (vii) in addition to the Guaranty Law, the Guaranty Claim is "barred, in whole or in part, by . . . [City] Administrative Code § 22-902, Administrative Code § 903, New York State Executive Order 202.3, and other federal, state, and local rules, regulations, and restrictions that were in effect related to the COVID-19 pandemic." (ECF No. 71 ¶¶ 23–29).

"The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact." Express Scripts, 588 F. Supp. 3d at 433–34 (citing Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986)).  "Where a plaintiff uses a summary judgment motion, in part, to challenge the legal sufficiency of an affirmative defense—on which the defendant bears the burden of proof at trial—a plaintiff 'may satisfy its Rule 56 burden by showing that there is an absence of evidence to support [an essential element of] the [non-moving party's] case.'" F.D.I.C. v. Giammettei, 34 F.3d 51, 54 (2d Cir. 1994) (quoting DiCola v. SwissRe Holding (North America), Inc., 996 F.2d 30, 32 (2d Cir. 1993)).  "While whatever evidence there is to support an essential element of an affirmative defense will be construed in a light most favorable to the non-moving defendant, there is 'no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or other similar materials negating the opponent's claim.'" Id. (quoting Celotex, 477 U.S. at 323).  "After all, in cases where there is an absence of evidence to support an essential element of a defense, with respect to that defense 'there can be no genuine issue as to any material fact since a complete failure of proof concerning an essential element of the [defendant's affirmative defense] necessarily renders all other facts immaterial." Id. at 54–55 (quoting Celotex, 477 U.S. at 323).

In analyzing a motion for summary judgment, a court must view all evidence "in the light most favorable to the non-moving party[,]" Overton v. N.Y. State Div. of Mil. & Naval Affs., 373 F.3d 83, 89 (2d Cir. 2004), and must "resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought[.]" Sec. Ins. Co. of Hartford v. Old Dominion Freight Line Inc., 391 F.3d 77, 83 (2d Cir. 2004).  To overcome a motion for summary judgment, the non-moving party must put forth more than a "scintilla of

evidence[,]" Anderson, 477 U.S. at 252, and must demonstrate more than "some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  The non-moving party "cannot defeat the motion by relying on the allegations in [its] pleading, or on conclusory statements, or on mere assertions that affidavits supporting the motion are not credible[.]" Gottlieb v. Cnty. of Orange, 84 F.3d 511, 518 (2d Cir. 1996).

## 2.  **Breach of Guaranty**[7]

"A guaranty is a collateral promise to answer for the payment of a debt or obligation of another, in the event the first person liable to pay or perform the obligation fails." Greenlight Reinsurance, Ltd. v. Appalachian Underwriters, Inc., 958 F. Supp. 2d 507, 519 (S.D.N.Y. 2013).  "To prevail on a motion for summary judgment to enforce a guaranty, a creditor must prove 'an absolute and unconditional guaranty, the underlying debt, and the guarantor's failure to perform under the guaranty.'" ATX Debt Fund 1, LLC v. Paul, No. 19 Civ. 8540 (JPO), 2024 WL 324780, at *4 (S.D.N.Y. Jan. 29, 2024) (quoting Gansevoort 69 Realty LLC v. Laba, 130 A.D.3d 521, 521 (1st Dep't 2015)); see Fonz, Inc. v. City Bakery Brands, LLC, No. 19 Civ. 10854 (LJL) (RWL), 2021 WL 5235190, at *3 (S.D.N.Y. Sept. 27, 2021) ("To succeed on a claim for breach of guaranty under New York law, a plaintiff must establish:  (1) the underlying debt, (2) an unconditional guaranty, and (3) the guarantor's failure to perform under the guaranty."), adopted by, 2021 WL 4803821 (S.D.N.Y. Oct. 13, 2021); see also GCCFC 2006-GG7 Westheimer Mall, LLC v.

---

[7] Neither party addresses which law applies to the merits of the Trustee's Guaranty Claim and, instead, have assumed that New York law applies.  (See ECF Nos. 73; 78–79).  The Court notes, however, that the Agreement provides that, "[h]aving been executed in the State of New York, its validity and enforceability and all transactions and questions arising [t]hereunder, shall be construed and interpreted according to the laws of the State of New York."  (ECF No. 75-1 ¶ 38.6).  Accordingly, the Court applies New York law to the Guaranty Claim.

Okun, No. 07 Civ. 10394 (NRB), 2008 WL 3891257, at *2 (S.D.N.Y. Aug. 21, 2008) ("Under New York law, in cases involving debt owed under guaranty obligations, a plaintiff establishes its prima facie entitlement to summary judgment by establishing the execution of the agreements at issue and nonpayment thereunder.").

### 3. The Guaranty Law

"On April 21, 2020, the New York City Council . . . announced its intent to consider a COVID-19 relief package to protect tenants, help small businesses survive, and find creative ways to address the public health crisis brought on by the virus." Melendez v. City of New York, 16 F.4th 992, 1001 (2d Cir. 2021) ("Melendez II"). This included the Guaranty Law, which took effect on May 26, 2020 and made certain "commercial lease guaranties permanently unenforceable for rent arrears arising between March 7, 2020, and June 30, 2021[.]" Id. Specifically, the Guaranty Law provides:

> A provision in a commercial lease or other rental agreement involving real property located within the city, or relating to such a lease or other rental agreement, that provides for one or more natural persons who are not the tenant under such agreement to become, upon the occurrence of a default or other event, wholly or partially personally liable for payment of rent, utility expenses or taxes owed by the tenant under such agreement, or fees and charges relating to routine building maintenance owed by the tenant under such agreement, shall not be enforceable against such natural persons if the conditions of paragraph 1 and 2 are satisfied:

> 1. The tenant satisfies the conditions of subparagraph (a), (b) or (c):

> (a) The tenant was required to cease serving patrons food or beverage for on-premises consumption or to cease operation under executive order number 202.3 issued by the governor on March 16, 2020;

> (b) The tenant was a non-essential retail establishment subject to in-person limitations under guidance issued by the New York state department of economic development pursuant to executive order number 202.6 issued by the governor on March 18, 2020; or

(c) The tenant was required to close to members of the public under executive order number 202.7 issued by the governor on March 19, 2020.

2. The default or other event causing such natural persons to become wholly or partially personally liable for such obligation occurred between March 7, 2020 and June 30, 2021, inclusive.

N.Y.C. Admin. Code § 22-1005.

"As the statutory text makes plain, the law pertains to leases held by commercial tenants who were required to cease or limit operations under Executive Orders 202.3, 202.6, or 202.7." Melendez II, 16 F.4th at 1004.  As relevant here, Executive Order 202.3 ("EO 202.3") provided that "[a]ny restaurant or bar in the state of New York shall cease serving patrons food or beverage on-premises effective at 8 pm on March 16, 2020, and until further notice shall only serve food or beverage for off-premises consumption."  9 N.Y.C.R.R. § 8.202.3.

The Guaranty Law "applies retroactively to rent arrears dating from March 7, 2020, as well as prospectively through June 30, 2021, without regard to the financial circumstances of the tenant, the guarantor, or the landlord."  Melendez II, 16 F.4th at 1004–05.  "In sum, for rent arrears arising during that almost sixteen-month period, the Guaranty Law does not simply defer a landlord's ability to enforce a personal guaranty; it forever extinguishes it."  Id. at 1005.  The Guaranty Law "bars only those claims against guarantors seeking rent that came due within the [Guaranty Law's] protection period."  Tamar Equities Corp. v. Signature Barbershop 33 Inc., 223 A.D.3d 421, 424 (1st Dep't 2024).

On July 10, 2020, a group of landlords filed in this Court an action under 42 U.S.C. § 1983 against the City of New York (the "City") and others seeking, inter alia, a judgment declaring the Guaranty Law unconstitutional under the Contracts Clause of the United States Constitution.  See Complaint, Melendez v. City of New York, 20 Civ. 5301 (RA) (S.D.N.Y. July 10, 2020), ECF No. 1;

see also U.S Const. art. 1, § 10.  On November 25, 2020, the Honorable Ronnie Abrams granted a motion to dismiss the action for failure to state a claim.  Melendez v. City of New York, 503 F. Supp. 3d 13, 38 (S.D.N.Y. 2020) ("Melendez I"), aff'd in part, vacated in part, rev'd in part, Melendez II, 16 F.4th at 992.  In dismissing the landlords' challenge to the Guaranty Law, Judge Abrams reasoned, inter alia, that the Contracts Clause case law required "substantial deference" to "policymakers making good-faith efforts to act in the public interest." Id. at 32, 36.

On appeal, the Second Circuit reversed in part, identifying "five serious concerns" as to whether the Guaranty Law is a "reasonable and appropriate means" for the City to achieve its stated public purpose, as the Contracts Clause requires.  Melendez II, 16 F.4th at 1038–47.  The Second Circuit directed the City to develop the record on remand to "identify . . . circumstances relevant to determining whether the Guaranty Law is [ ] reasonable and appropriate[.]"  Id. at 1046.

On remand, on March 31, 2023, after discovery, Judge Abrams granted summary judgment in the landlords' favor and declared the Guaranty Law unconstitutional.  Melendez v. City of New York, 668 F. Supp. 3d 184, 189 (S.D.N.Y. 2023) ("Melendez III").  "Guided by the Second Circuit's specific and thorough instruction [in Melendez II], the Court [found] that the City ha[d] been unable to adduce record evidence demonstrating that the Guaranty Law is reasonably tailored to accomplish its legitimate policy goals." Id.  The defendants' appeal of Melendez III is pending. See Notice of Appeal, Melendez v. City of New York, No. 23-683 (2d Cir. Apr. 27, 2023), ECF No. 1.

B. **Application**

1. **Liability**

The Trustee argues that it is entitled to summary judgment on the Guaranty Claim because it is undisputed that (i) the Guaranty is "absolute and unconditional[,]" (ii) the Tenant owes an underlying debt under the Agreement, and (iii) Mr. Rigos breached the Guaranty. (ECF No. 73 at 10).  The Trustee also argues that Mr. Rigos' Guaranty Law Defense fails as a matter of law.  (Id. at 11–13).  Specifically, the Trustee argues that the Guaranty Law is inapplicable because (i) the Tenant "was not a restaurant or bar serving patrons food or beverages for on premises consumption[,]" and (ii) in any event, "the Tenant's initial default (failure to pay rent) occurred on March 1, 2019, over a year before" the Guaranty Law Period.  (Id. at 11–12).

In his Opposition, Mr. Rigos does not dispute that the Tenant breached the Agreement or that he breached the Guaranty, and raises only one argument against summary judgment, i.e., that "genuine material questions of fact remain as to what extent the [Guaranty Law] bars [the Trustee]'s claims." (ECF No. 78 at 4).  To support this argument, Mr. Rigos relies on Mr. DiSpirito's testimony that he "believed" the Guaranty Law required the Closure, which occurred during the Guaranty Law Period.  (Id. at 6–7 (citing ECF No. 77-2 at 38–41, 57–58)).  Mr. Rigos notes that, "when asked several times whether he believed that [the] Tenant's business was a 'drinking and eating establishment,' [Mr.] DiSpirito testified that he did not know what constituted such an 'establishment' and that he thought that it meant 'generally a food business.'"  (Id. at 6–7 (citing ECF No. 77-2 at 55)).  Mr. Rigos similarly relies on his own testimony that he "believed [the] Tenant's business [as a commercial kitchen] was required to cease operations due to COVID restrictions."  (Id. at 7 (citing ECF No. 77-3 at 10–13)).  He also claims that he does "not know

when the Tenant's default in payment of rent occurred and for what period of time the [Trustee] is seeking rent reimbursement."  (Id. (citing ECF No. 77-3 at 11–12)).

In his Reply, the Trustee repeats his argument that the Guaranty Law Defense is "frivolous" because the Guaranty Law and EO 202.3 "only apply to restaurants or bars serving patrons food or beverages for on-premises consumption."  (ECF No. 79 at 1).  He also cites Judge Abrams' determination in Melendez III that the Guaranty Law is unconstitutional.  (Id. at 3).

### a.  <u>The Trustee is entitled to summary judgment.</u>

The undisputed evidence shows that the Trustee has established each element of the Guaranty Claim, <u>i.e.</u>, the underlying debt, an unconditional guaranty, and the guarantor's failure to perform under the guaranty.  <u>Fonz</u>, 2021 WL 5235190, at *3.

First, with respect to the underlying debt, the Trustee and the Tenant entered into the Agreement, under which the Tenant leased the Premises from the Trust in exchange for monthly payments due "in advance, on the first day of each and every calendar month throughout the" term of the Agreement.  (ECF No. 75-1 at 3–5 ¶¶ 3.2, 4.5; <u>see</u> ECF Nos. 13 ¶ 6; 71 ¶ 6; 75 ¶ 3; 75-1 at 1; 76 ¶ 1).  "Beginning March 1, 2019, [the] Tenant failed to, among other things make payments owed under the [] Agreement and, upon information and belief, maintain insurance policies as required under the [] Agreement."  (ECF No. 75 ¶ 9).  Despite a written demand by the Trust, the Tenant failed to pay Rent required under the Agreement, resulting in an underlying debt.  (ECF No 75-4 at 2).  <u>See, e.g.</u>, <u>ATX</u>, 2024 WL 324780, at *4 (finding that borrower's failure to repay a loan was an underlying debt for which guarantor was liable); <u>Bank of Am.</u>, 2024 WL 182408, at *5 (same).

Second, the Guaranty is unconditional and unambiguous:  Mr. Rigos "expressly, absolutely, unconditionally[,] and irrevocably guarantee[d], without set-off or deduction, jointly and severally, the prompt payment . . . when due by the Tenant of all monies . . . due the [Trust] pursuant to the" Agreement.  (ECF No. 75-1 at 26 ¶ 37.1).  See ATX, 2024 WL 324780, at *4.

Third, Mr. Rigos failed to perform under the Guaranty.  In the Rigos Demand Letter, the Trustee advised Mr. Rigos that "[t]he Tenant ha[d] been in default under the [Agreement] since at least March 2019" and, pursuant to the Guaranty, demanded that Mr. Rigos "make payment of an amount equal to all Rent (including Additional Rent) due under the Lease for the twelve[-]month period following the date of the default giving rise to such Payment Obligations." (ECF No. 74-2 at 2).  Despite this demand, Mr. Rigos "failed and refused to comply with the Guaranty."  (ECF No. 76 ¶ 19; see ECF No. 75 ¶ 12).  See ATX, 2024 WL 324780, at *4; Bank of Am., 2024 WL 182408, at *5.

Because the "Guaranty is an unambiguous contract with no questions of material fact present, summary judgment is appropriate."  A&R Real Est., Inc. v. Dorian New York LLC, No. 20 Civ. 6976 (ER), 2023 WL 6257267, at *9 (S.D.N.Y. Sept. 26, 2023); see ATX, 2024 WL 324780, at *4 ("Because there is no genuine dispute that [the defendant] breached the Guaranty, . . . the Court grants [the plaintiff]'s motion for summary judgment.").

### b.  Mr. Rigos' Guaranty Law Defense fails.[8]

Mr. Rigos has failed to establish through admissible evidence the existence of any question of material fact regarding whether the Guaranty Law bars the Guaranty Claim.  To the

---

[8] Although Mr. Rigos raised the Other Defenses in his Answer (ECF No. 71 ¶¶ 23–29), he "did not assert any of these defenses in his [Opposition] to [the Motion and], therefore, they have been waived" with respect to the question of liability.  Windward Bora LLC v. Lungen, No. 22 Civ. 4743 (VB) (JCM),

contrary, the undisputed evidence makes clear that the Guaranty Law does not apply for two reasons.

First, because the Guaranty Law "bars only those claims against guarantors seeking rent that came due within the" Guaranty Law Period, it does not bar the Guaranty Claim, which seeks damages <u>outside</u> the Guaranty Law Period.  <u>Tamar</u>, 223 A.D.3d at 424.  As the Trustee makes clear, the Default Period on which the Trustee bases Mr. Rigos' liability—<u>i.e.</u>, March 2019 through February 2020—entirely predates the effective date of the Guaranty Law, March 7, 2020. (ECF Nos. 75-1 at 25–26 ¶ 37.1; 76 ¶ 16; <u>see also</u> ECF No. 11 at 2 (Trustee representing to the Court that he is "only seeking damages that accrued during the 12-month period between March 1, 2019 and February 29, 2020 (excluding interest and attorneys' fees that are permissible pursuant to the" Agreement))).  <u>See</u> N.Y.C. Admin. Code § 22-1005(2).  Under the Agreement, the Tenant was responsible for paying each month's rent as it became due, with each failure to do so constituting a separate, independent default.  (ECF Nos. 75 ¶ 3; 75-1 at 3, 13 ¶¶ 3.2, 3.4, 17.1; 76 ¶¶ 1–3).  Thus, the Tenant was liable for unpaid Rent as it accrued and, "[i]n turn, [Mr. Rigos] was liable for each and every rent default as it accrued[.]"  <u>Tamar</u>, 223 A.D.3d at 424; <u>see</u> <u>3rd & 60th Assocs. Sub LLC v. Third Ave. M & I, LLC</u>, 199 A.D.3d 601, 602 (1st Dep't 2021) ("[R]egardless of when a tenant's lease default occurred, the critical time frame for determining when the protections of [the Guaranty Law] attach is the time of the event causing [the guarantor] to

---

2023 WL 9100340, at *3 n.4 (S.D.N.Y. Aug. 29, 2023), <u>adopted by</u>, 2023 WL 8600699 (S.D.N.Y. Dec. 12, 2023); <u>see</u> <u>Wilmington Tr., Nat'l Ass'n v. Winta Asset Mgmt. LLC</u>, No. 20 Civ. 5309 (JGK), 2022 WL 2657166, at *7 (S.D.N.Y. July 8, 2022) (finding that defendants "waived [their] affirmative defenses by not raising them in opposition to the plaintiff's motion for summary judgment"); <u>see also</u> <u>Palmieri v. Lynch</u>, 392 F.3d 73, 87 (2d Cir. 2004) (finding that party waived arguments not raised in opposition to summary judgment).

become liable[.]"), lv. to appeal denied 38 N.Y.3d 912 (2022); N.Y.C. Admin. Code § 22-1005(2).

Mr. Rigos' argument that "[t]he Amended Complaint is ambiguous as to the time period of the

allegedly unpaid [R]ent that [the Trustee] is seeking to recover" is conclusory and fails to address

the undisputed record evidence.  (ECF No. 78 at 4).  Thus, because the Trustee seeks damages

only for amounts that became due outside the Guaranty Law Period, the Guaranty Law does not

apply and the Guaranty Law Defense fails as a matter of law.  See Tamar, 223 A.D.3d at 424

(reversing lower court decision dismissing breach of guaranty claim as violative of the Guaranty

Law, where the "plaintiff sought damages against defendant guarantor only for amounts that

became due and for which guarantor became liable outside the Guaranty Law period"); 88

Greenwich Owner LLC v. 21 Rector St LLC, 217 A.D.3d 432, 434 (1st Dep't 2023) (affirming

summary judgment for plaintiff and rejecting affirmative defense based on Guaranty Law where

the "plaintiff only moved for, and the order only award[ed], damages for which guarantor

became liable outside the statutory period").

Second, Mr. Rigos has failed to establish that a genuine issue of material fact exists as to

whether the Tenant was a "restaurant or bar in the state of New York [that was required to]

cease serving patrons food or beverage on-premises[.]"  9 N.Y.C.R.R. § 8.202.3.  (See ECF No. 78

at 6–7).  The undisputed evidence shows that it was not.  Mr. DiSpirito testified unequivocally

that:  (i) he "never operated a restaurant at the [P]remises" and that "it was purely a meal

delivery business[;]" (ii); the Premises had neither "on-premises food and beverage service" nor

"members of the general public eating or drinking [;]" and (iii) he "never had a permit to operate

a restaurant at the [P]remises" or for "any on premises food or beverage service[.]"  (ECF No. 77-2

at 31, 37–38, 56, 62).  Based on this undisputed testimony, and in the absence of any admissible

evidence suggesting the contrary, no reasonable jury could conclude that the Tenant operated in the Premises a restaurant or bar that was required to cease on-site food and beverage service because of EO 202.3.  While Mr. Rigos argues that he and Mr. DiSpirito "believed" that EO 202.3 required the Tenant to cease operations, these "conclusory statements" do not undermine the undisputed admissible evidence and do not defeat summary judgment for the Trustee.  Gottlieb, 84 F.3d at 518.

Accordingly, the Guaranty Law Defense fails as a matter of law.[9]

### 2.  **Damages**

The Trustee argues that Mr. Rigos is liable for the Guaranty Damages amounting to $155,774.58, "which represents the amount of all Rent (including Additional Rent) due under the [] Agreement for the" Default Period, i.e., March 2019 through February 2020.  (ECF No. 76 ¶ 16 (citing ECF No. 75-1 at 25–26 ¶ 37.1)).

"Summary judgment may be granted on damages where there is no fact dispute as to the amount of damages."  GCCFC, 2008 WL 3891257, at *3 (S.D.N.Y. Aug. 21, 2008).  "The general rule for measuring damages for breach of contract has long been settled[;] [i]t is the amount necessary to put the plaintiff in the same economic position he would have been in had the defendant fulfilled his contract."  Adams v. Lindblad Travel, Inc., 730 F.2d 89, 92 (2d Cir. 1984).  "Where the contract at issue gives rise to a monetary payment obligation, then the amount owed should be awarded as damages."  HTV Indus., Inc. v. Agarwal, 317 F. Supp. 3d 707, 717 (S.D.N.Y.

---

[9] As discussed above (see § III.A.3 supra), on March 31, 2023, Judge Abrams found the Guaranty Law to be unconstitutional.  Melendez III, 668 F. Supp. 3d at 189.  The Trustee does not challenge the constitutionality of the Guaranty Law, and seeks damages outside the Guaranty Law Period, such that the Court need not consider it.

2018) (citing Arch Ins. Co. v. Precision Stone, Inc., 584 F.3d 33, 41 (2d Cir. 2009)), adopted by, 317 F. Supp. 3d 707 (S.D.N.Y. 2018).

The Court concludes that the Trustee has not established his entitlement to summary judgment on the issue of damages for two reasons.  First, the record contains conflicting evidence regarding the amount of the Guaranty Damages.  The Trustee claims that the Guaranty Damages equal $155,774.58 (ECF No. 76 ¶ 16), and while he did not provide a calculation for this figure, it appears to reflect the amount of Unpaid Rent during the Default Period, i.e., from March 2019 through February 2020.  In the Rigos Demand Letter, however, the Trustee advised Mr. Rigos that "the amount due [was] $150,600[,]" which, in the Trustee's words, also represented the "amount equal to all Rent (including Additional Rent) due under the Lease for the twelve[-]month period following the date of the [Tenant's] default" in March 2019.   (ECF No. 74-2 at 2; see ECF No. 76 ¶ 18).  Moreover, the Tenant Demand Letter reflects that the Additional Rent in 2019 was $560.00 per month, but the Ledger reflects that the Additional Rent for these months was $990.08.  (ECF Nos. 75-2 at 2; 75-4 at 2). In the Motion, the Trustee does not acknowledge—much less explain—these discrepancies, and the Court declines to resolve them on the current record.

Second, the Trustee does not address to what extent, if any, the Payments factor into the calculation of damages.  As discussed above (see § II.A.5, supra), the Ledger reflects that, although the Tenant never fully paid the Rent balance during the Default Period, the Tenant made the six Payments, which totaled $88,250.00, to the Trust during the Default Period.  (ECF No. 75-3 at 2).  The Trustee incorporated the Payments in its calculation of the Unpaid Rent.  (Id.)  The Payments are not reflected, however, in the Trustee's calculation of the Guaranty Damages.

(ECF No. 76 ¶ 16 (citing ECF No. 75-1 at 25–26 ¶ 37.1); see ECF Nos. 75-1 at 3 ¶ 3.4; 75-2 at 2). The Agreement explicitly limits the Trust's recovery from Mr. Rigos to "what [the Trust] would receive from the Tenant (assuming the Tenant had sufficient funds) in a claim for damages or specific performance under the [Agreement]."  (ECF No. 75-1 at 27 ¶ 37.1 (providing that "in any claim brought against [Mr. Rigos] []under [the Agreement], [Mr. Rigos] shall be entitled to assert all defenses and rights that the Tenant may have against the [Trust].")).  As such, a question of fact remains as to the damages to which the Trust is entitled under the Agreement, including whether the Tenant—and, by extension, Mr. Rigos—is entitled to a set-off for the Payments. Indeed, reducing the Guaranty Damages by the amount of the Payments would appear to "put the [Trustee] in the same economic position [it] would have been in had the [Tenant] fulfilled [the Agreement].'"  Asesoral Bus. Partners, LLC v. Seatech Worldwide Corp., No. 19 Civ. 11512 (AJN) (SLC), 2021 WL 6755016, at *5 (S.D.N.Y. Dec. 16, 2021), adopted by, 2022 WL 1265945 (S.D.N.Y. Apr. 28, 2022).  Neither party addresses this question in the Motion, Opposition, or Reply, and the Court declines to decide it sua sponte and instead will conduct an inquest on the appropriate amount of damages.  See Delshah 60 Ninth, LLC v. Free People of PA LLC, No. 20 Civ. 5905 (JMF) (SLC), 2022 WL 3536133, at *5 (S.D.N.Y. Aug. 17, 2022) (granting summary judgment for plaintiff on defendant's liability for breach of lease agreement, and ordering damages inquest), amended on reconsideration in part, 2022 WL 5108049 (S.D.N.Y. Oct. 4, 2022); Indem. Ins. Co. of N. Am. v. Alberts, No. 87 Civ. 3357 (MBM), 1988 WL 92112, at *3 (S.D.N.Y. Aug. 30, 1988) (granting summary judgment for plaintiff on defendant's liability for indemnification under loan agreement but declining to grant summary judgment on damages

due to "questions of fact as to the correct amount of set-off" for amounts paid under the agreement).

**IV.<u>CONCLUSION</u>**

For the reasons set forth above, the Motion is GRANTED IN PART and DENIED IN PART. The Trust is entitled to summary judgment on Mr. Rigos' liability for the Guaranty Claim, and the Court will conduct an inquest into the appropriate amount of damages, including prejudgment interest and attorneys' fees.  An <u>in-person</u> conference is scheduled for **Thursday, April 4, 2024 at 11:00 a.m.** in Courtroom 18A, 500 Pearl Street, New York, New York, to set a schedule for the damages inquest.

The Clerk of Court is respectfully directed to close ECF No. 72.

Dated:       New York, New York
             March 19, 2024

SO ORDERED.

_____
**SARAH L. CAVE**
**United States Magistrate Judge**